# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| **VINCENT LAMONT WOODHOUSE,** ) | |
| Plaintiff ) | Civil Action No.: 7:17cv00129 |
| ) | |
| v. ) | |
| ) | **REPORT AND** |
| ) | **RECOMMENDATION** |
| **UNIT MANAGER DUNCAN, et al.,** ) | By: Pamela Meade Sargent |
| Defendants ) | United States Magistrate Judge |

The pro se plaintiff, Vincent Lamont Woodhouse, ("Woodhouse"), an inmate incarcerated at Red Onion State Prison, ("Red Onion"), brings this civil rights action pursuant to 42 U.S.C. § 1983 against the defendants -- Duncan, Unit Manager; Kiser, Warden of Red Onion; Artrip, Assistant Warden; Gallihar, E.B.P. Manager; Swiney, Unit Manager; Geraldine Baker, T.P.S.; Lt. Kiser; Lt. Stanley; Correctional Officer Miller; Counselor Sowards; Counselor Stallard; Counselor Kegley; Counselor Jonathan M. Gibson; Ingrim, Regional Administrator; J. B. Messer, Grievance Coordinator; Adams, Investigator; Lt. Fannin, Investigator; Lt. McQueen, Investigator; C. Michael Younce, Unit Manager; and Harold Clarke, Director of the Virginia Department of Corrections, ("VDOC").[1] Woodhouse asserts various claims arising from his long-term placement in segregation housing. He seeks preliminary injunctive relief ordering the defendants to transfer him from segregation housing at Red Onion to the protective housing unit at Dillwyn Correctional Center, ("Dillwyn").

---

[1] The court is aware that the plaintiff misspelled a number of the defendants' names in his Complaint.

Woodhouse's motion for preliminary injunctive relief is before the undersigned magistrate judge on referral pursuant to 28 U.S.C. § 636(b)(1)(B) for a report setting forth appropriate findings of fact and conclusions of law and recommended disposition. The motion was heard ex parte on May 17, 2017.

### I. Facts

In his sworn Complaint, (Docket Item No. 1), Woodhouse states that he has been treated for bipolar disorder and major depression since 2009. Woodhouse said that he had taken numerous mental health medications and was then taking Cymbalta. Woodhouse stated that, while held in segregation, he was in his cell at least 23 hours a day. He claimed that he was often denied showers and recreation and, on those days, he was in his cell 24 hours a day. When he did receive recreation, he was placed in a small cage outside with no exercise equipment for one hour. He also claimed that the food portions served in segregation were smaller. Woodhouse stated that almost all human contact is denied to prisoners held in segregation. These prisoners, he said, are not allowed to attend congregational religious services or educational services. Woodhouse said that he was not allowed contact visits and was allowed only two telephone calls home a month. He said that there was no television in his segregation housing unit.

Woodhouse wrote that segregation housing units were often noisy, with prisoners yelling through their cell doors to communicate. He said inmates threw feces in the ventilation ducts. He said his commissary privileges were restricted, and he was allowed to have only 13 books in his cell at a time. He wrote that the light in his segregation cell was dimmed every night at 10 p.m. and was turned back on bright at 5:45 a.m. every morning. According to Woodhouse, recreation

was extended to two hours a day for prisoners in segregation in October 2016, but, he said, his recreation often was denied.

According to Woodhouse, he was written four prison infractions in October 2016. One of these infractions was dismissed in December, and he was given notice by Counselor Sowards on December 30, 2016, that an Institutional Classification hearing would be held in the next 48 hours. Woodhouse stated that, on January 11, 2017, Unit Manager Duncan came to his cell door and told him that, since the infraction had been dismissed, Woodhouse's security level would be decreased from a "S" for segregation to a Level 6.  Duncan told Woodhouse that he would be moved to the Step Down Phase 1 unit. Woodhouse said that he told Duncan that he was at risk of being attacked by Blood gang members, and he requested to be placed in protective custody.

Woodhouse further stated that, on January 15, 2017, he told Gallihar that he was at risk of being harmed by Blood gang members if placed in general population.  Woodhouse said that he told Gallihar that he needed to be placed in protective custody. He said that Gallihar responded, "you either go to phase 1 or rot is seg[regation]." Woodhouse also stated that Counselor Stallard told him on January 18, 2017, "I hope those Bloods kill you in phase 1, since you want to do paperwork." He said that he told Geraldine Baker on January 20, 2017, that the Bloods wanted to kill him. He said she responded, "I know all about it; I don't give a fuck this is red neck ville." Woodhouse said that he advised Ingrim on January 23, 2017, that he had been in segregation for eight years and that he risked being harmed by Blood gang members if he was not placed in protective custody. He said Ingrim just walked away.

Woodhouse attached to his Complaint an Offender Request form he submitted to Assistant Warden Artrip on January 26, 2017. The form was stamped received on January 30, 2017, by the Assistant Warden. A response was made by Duncan and dated January 31, 2017. On this form, Woodhouse complained of his continued placement in segregation. He also stated, "Unit Manager Duncan has also ignored the threats I've received by the Bloods. … Please don't send me to phase I. Please send me to protective custody! I've been in segregation for 8 YEARS NOW!! I need to be in [protective custody]."

Woodhouse stated that Lt. Kiser and Sowards came to his cell door and conducted an Institutional Classification Authority, ("ICA"), hearing on January 27, 2017. Woodhouse said that he told Lt. Kiser and Sowards that he was at risk of being attacked by Blood gang members in general population. Woodhouse said that Lt. Kiser told him, "I understand that but the decision to send you to step down phase one population came from … Gallihar and I cannot disobey his orders." Woodhouse said that another ICA hearing was conducted at his cell door by Lt. Stanley and Sowards on February 3, 2017. Woodhouse said that he advised them that he was at risk of being attacked by Blood gang members in general population. He said that Stanley and Sowards recommended he be placed in Step Down Phase 1. He said that Duncan reviewed and approved of this recommendation.

At the May 17, 2017, hearing, Woodhouse testified that he had been held in segregation housing at Red Onion since the beginning of March 2017. Woodhouse said that he originally was placed in segregation housing at Red Onion in June of 2009. He remained in segregation at either Red Onion or Wallens Ridge State Prison until he was transferred to the Secured Integration Pod, ("SIP"), at Red Onion in December 2013. Woodhouse testified that the conditions in SIP were

identical to conditions in segregation housing. Woodhouse said he was returned to segregation on October 29, 2016. He remained in segregation housing until he was placed in a "step-down" housing unit on February 13, 2017.

Woodhouse testified that he was forced by Correctional Officer Miller to leave segregation. He said that Miller told him, "if you don't pack up and leave, we will refuse to feed you." Woodhouse testified that he requested to be moved to protective custody, but Unit Manager Swiney told him, "I don't put niggers in PC [protective custody]." In his Complaint, Woodhouse stated that he recognized three Blood gang members housed in the Step Down Phase 1 unit where he was moved on February 13, 2017. The next day, Woodhouse stated, one of the Blood gang members told him "I'm a get the [correctional officer] in the booth to pop your door and I'm going in that cell." Woodhouse said that he feared for his life. He said that Counselor Stallard came to his door, and he asked Stallard why he had been placed in population when it was documented that he was at risk of attack by Blood gang members. He said he told Stallard that he was going to file a lawsuit. He said that Stallard replied, "I don't give a fuck about your paperwork, I dare you to try to write it up, you'll never get a response. I might get Swiney to beat [your] ass again if you try to write me up!" In his Complaint, Woodhouse said that he received another institutional charge and was placed back in segregation later that day.

At his hearing, Woodhouse testified that he was transferred back to segregation on February 14, 2017, upon his request. Woodhouse said that he requested to be returned to segregation because he feared for his life in the Step Down unit because the Blood gang had put a "contract" out on him. He said that the Bloods had been instructed to kill him because he had left the gang and converted to Islam.

When asked what information Woodhouse had about any threat on his life, he said he had heard numerous Blood gang members say, "Bloods in, Bloods out," meaning members were not allowed to quit the gang. He said that the last time anyone conveyed a threat to his safety was in March 2017. He said another prisoner named Superior told him, "you can't stay in hole forever." Woodhouse said that he had reported Superior's threat to Investigator Fannin.

In his Complaint, Woodhouse said that Swiney and Stallard conducted another ICA hearing at his cell door on February 27, 2017. He said that Swiney denied his request to be placed in protective custody and said, "I don't put niggers on [protective custody]."

Woodhouse testified that he suffers from a number of mental or emotional problems, including bipolar disorder and major depression, for which he takes Prozac. Woodhouse submitted into evidence a partial copy of VDOC Operating Procedure 730.2 on Mental Health Services: Screening, Assessment, And Classification, (Plaintiff's Exhibit No. 1), which states that prisoners diagnosed with bipolar disorder or major depressive disorder are considered to have serious mental illnesses. He said that the correctional officers in segregation often deny him daily recreation. He said recreation time is the only time that he is removed from his small cell, which he inhabits 23 hours a day. He said that the officers purposefully rattled chains on his cell door every night in an effort to disrupt his ability to sleep.

When asked what danger he faced, in that he had been returned to segregation, Woodhouse stated that he feared a physical or sexual assault by the correctional officers and additional injury to his mental health. He said that correctional

officers had threatened him with future beatings as a result of him filing suit. He did not, however, identify these individuals or testify to any of the circumstances surrounding these alleged threats. Woodhouse admitted that he had never been assaulted by any of the officers while being housed in segregation at Red Onion. He also admitted that he was protected from assault by other prisoners, including Blood gang members, while housed in segregation.

Woodhouse stated that he had filed a complaint under the Prison Rape Elimination Act, ("PREA"), against Unit Manager Swiney and three other officers when he was housed at Wallens Ridge State Prison. He stated that Swiney now worked at Red Onion, although Woodhouse admitted that Swiney was in charge of the D Building, and he was housed in the C Building. Woodhouse said that he last had contact with Swiney in April 2017, when Swiney accompanied Investigator Fannin to his cell. Woodhouse testified that Swiney told him, "what do you think will happen to you when this lawsuit is over? ... I will show you deliberate indifference." Woodhouse said that he gave Swiney a letter requesting placement in protective custody. He said that Swiney responded by placing him in the Step Down Phase 1 unit.

Woodhouse also submitted into evidence certificates showing that he had completed the Thinking for a Change program and several steps in the Challenge Series, including Orientation, Rational Thinking, Criminal Lifestyles, Communication Skills, Lifestyle Balance and Transition. (Plaintiff's Exhibit No. 2). Woodhouse testified that he had completed all VDOC programs required to work his way out of segregation housing.

Red Onion Inmate Alfonza Hardy Greenhill, #1200160, also testified that the correctional officers working in segregation housing often denied the prisoners showers and recreation. Greenhill said that, any time a prisoner is moved from a segregation cell, he is accompanied by at least two correctional officers. If given recreation, the officers accompany a prisoner to a cage on the recreation yard, in which the prisoner is placed alone. He testified that, if a prisoner is housed in segregation, the prisoner is never allowed to be in a room with any other prisoners. Greenhill said that he was housed in a cell beside Woodhouse in 2014 or early 2015.

Woodhouse also filed a Declaration in Support of Plaintiff's Motion for Preliminary Injunction, (Docket Item No. 9) ("Declaration"). In this Declaration, Woodhouse stated, "I am a mentally ill prisoner. I have and continue to be treated for Bi-polar Depression and Major Depression since 2009. … I have been confined to solitary confinement since June of 2009…." Woodhouse also stated that "I am suffering irreparable harm," but he did not identify the harm.

## II. Analysis

Woodhouse seeks preliminary injunctive relief requiring the defendants to transfer him from segregation housing at Red Onion to the protective housing unit at Dillwyn. "The standard for granting either a [temporary restraining order] or a preliminary injunction is the same." *Moore v. Kempthorne*, 464 F. Supp. 2d 519, 525 (E.D. Va. 2006) (quoting *U.S. ex rel. $12,642.00 U.S. Currency v. Commonwealth of Va.*, 2003 WL 23710710, at *1 (E.D. Va. 2003) (not reported) (citing *Rum Creek Coal Sales, Inc. v. Caperton*, 926 F.2d 353 (4th Cir. 1991); *Ry. Labor Execs. v. Wheeling Acquisition Corp.*, 736 F. Supp. 1397 (E.D. Va. 1990)).

A plaintiff seeking preliminary injunctive relief is required to demonstrate that he is likely to succeed on the merits of his claim, that he is likely to suffer irreparable injury in the absence of an injunction, that the balance of equities tips in his favor and that an injunction is in the public interest. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). A preliminary injunction is an extraordinary remedy, never awarded as of right. *See Winter*, 555 U.S. at 24. The plaintiff bears the burden of establishing that the court should grant a preliminary injunction or temporary restraining order. *See Manning v. Hunt*, 119 F.3d 254, 263 (4th Cir. 1997) (citing *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir. 1991)).

I will recommend that the court deny Woodhouse's request for preliminary injunctive relief because I find that he has not shown that he is likely to suffer irreparable injury in the absence of his requested preliminary injunctive relief. *See Winter,* 555 U.S. at 20. At his hearing, Woodhouse admitted that he was not in danger of injury by any other inmate since he had been returned to segregation housing. While he said that he feared assault by correctional officers, Woodhouse admitted that he had never been assaulted by correctional officers while housed in segregation at Red Onion. Woodhouse also testified that he feared that his mental health would continue to deteriorate in segregation housing. The party seeking preliminary injunctive relief must show that the irreparable harm he faces in the absence of relief is "neither remote nor speculative, but actual and imminent." *Direx Israel, Ltd.*, 952 F.2d at 811. Woodhouse has made no such showing.

# PROPOSED FINDINGS OF FACTS AND CONCLUSIONS OF LAW

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

Woodhouse has failed to show that he is likely to suffer irreparable harm in the absence of preliminary injunctive relief.

## RECOMMENDED DISPOSITION

Based on the above-stated reasons, I recommend the court deny the plaintiff's request for preliminary injunctive relief.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file written objection to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable Michael F. Urbanski, United States District Judge.

The Clerk is directed to send copies of this Report and Recommendation to all counsel of record and unrepresented parties.

DATED: June 30, 2017.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE

-11-